IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ELVIO PEREZ MEDINA | CRIMINAL ACTION<br>NO. 14-364 |

**PAPPERT, J.**                                                                                                                 **July 8, 2022**

## MEMORANDUM

Elvio Perez Medina seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] The Court denies the Motion because extraordinary and compelling reasons do not warrant his release and, in any event, the factors under 18 U.S.C. § 3553(a) counsel against granting relief.

I

A

Medina is serving a 180-month prison sentence after pleading guilty to distribution of heroin, possession of heroin with the intent to distribute, possession of a firearm in furtherance of a drug trafficking crime and unlawful reentry into the United States. (*See* ECF 1; ECF 46; ECF 52; ECF 96 at 2.) He is a citizen of the Dominican Republic and first came to the United States in 1986, when he was 21. (Gov't Resp., ECF 96 at 2.) He faces deportation upon release. (*Id.* at 2, 4.) He is also subject to an outstanding New York state parole warrant for 16 years of back time on a 1996 robbery conviction. (*Id.* at 4.)

---

[1] Medina filed his *pro se* motion on September 17, 2021. (ECF 84.) Although counsel then entered appearances on his behalf (ECF 86, 89), they have not filed anything to supplement it.

In 1991, Medina was convicted and sentenced to 18 to 54 months in prison for participating in a violent home invasion robbery in New York. (*Id.*) He served the minimum term, and within six months of his release, he was arrested for another home invasion robbery. (*Id.*) He was subsequently sentenced to 18 to 36 years imprisonment. (*Id.*) In 2012 he was released into ICE custody and removed from the United States based on his prior aggravated felony conviction. (*Id.*) Eleven months later, he illegally reentered the United States. (*Id.* at 3.)

In March 2014, he distributed one gram of heroin to a cooperating defendant, leading to this case and the charge against him in Count One. (*Id.*) The next month, when a Pennsylvania State Trooper stopped him for a traffic violation, Medina provided a false name and consented to a vehicle search. (*Id.*) His car contained just over a kilogram of heroin (Count Two) and $1,347 in cash. (*Id.*) Medina also consented to a search of his Philadelphia residence. (*Id.*) There, officers found more drugs, including 206 grams of heroin (Count 3), along with drug trafficking paraphernalia, four weapons – three of which had been reported stolen – and 569 rounds of ammunition. (*Id.*)

Medina has served approximately ninety-nine months of his sentence and, as of the date of the Government's response to his motion, had credit for good conduct time of approximately eight months, for a total time served of approximately 107 months. (Gov't Resp., ECF 96 at 3.) His minimum release date is July 19, 2027. (*Id.*) While in custody, he has committed four disciplinary infractions: possessing an unauthorized item (March 18, 2015); possessing a hazardous tool – a cell phone (January 30, 2016 and August 18, 2019); and interfering with staff (December 30, 2017). (*Id.* at 3-4.)

B

Medina, who is 57, requests release based on the threat of COVID-19.[2] (Mot for Release, ECF 84 at 3.) He claims he suffers from obesity-related health conditions, including "high blood pressure, high cholesterol and severe, debilitating back pain." (*Id.*) He says he is treated with prednisone and other medications. (*Id.* at 4.)

Medina's medical records show he is overweight, but not clinically obese (5' 5", 174 pounds, BMI 29). (Gov't Ex. A, ECF 94.) He has high blood pressure and elevated cholesterol. (*See, e.g..*, *id.* at ECF p. 4, 7, 17.) He also suffers from chronic back pain and runner's knee (chondromalacia of patella). (*Id.* at ECF p. 4, 47.) His chronic conditions have been treated with a statin, aspirin and naproxen. (*Id.* at ECF p. 2.)

In February 2020, Medina was seen for "cold-like symptoms," but his lungs were clear. (*Id.* at ECF p. 62-65.) He believes he "might" have contracted COVID at some point and says he still suffers from symptoms. (Mot for Release, ECF 84 at 5.). He contends the facility where he is serving his sentence, North Lake Correctional Institution in Baldwin, Michigan, declined to test him for the virus. (*Id.*) However, Medina's medical records show he has been tested for COVID-19 at least twice, with negative results. (Gov't Ex. A, ECF 94 at ECF p. 4, 41, 42.) He also received the Janssen (Johnson & Johnson) COVID-19 vaccine on May 11, 2021. (*Id.* at ECF p. 1, 109-10.)

II

A

A district court may reduce an inmate's sentence as a form of compassionate

---

[2] There is no evidence Medina exhausted his administrative remedies but the Court, like the Government, nonetheless addresses Medina's motion on the merits.

3

release only if it finds that (1) extraordinary and compelling reasons warrant such a reduction; (2) the sentencing factors set forth in § 3553(a), to the extent they are applicable, warrant a reduction; and (3) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Relevant § 3553(a) factors a court must consider include the "nature and circumstances of the offense," "the history and characteristics of the defendant," and the "need for the sentence imposed—to reflect the seriousness of the offense, . . . promote respect for the law, . . . provide just punishment for the offense" and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(A), (C). The applicable Sentencing Commission policy statement requires a court to determine a defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g)" prior to release. U.S.S.G. § 1B1.13.

B

Medina's weight and hypertension are not extraordinary or compelling reasons for reducing his sentence, either on their own or in combination with COVID-19. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). At a minimum, Medina must show his conditions put him at particular risk. *See United States v. Ulmer*, No. 18-00579-3, 2021 WL 844579, at *1 (E.D. Pa. Mar. 5, 2021). He has not. His medical records do not indicate he ever contracted COVID-19 even though he suspects otherwise. Moreover, he has received a COVID-19 vaccine, mitigating the risk of severe illness if he ever does become infected. *See United States v. Berry*, No. 09-116, 2021 WL 3537145, at *3 (E.D.

Pa. Aug. 11, 2021) (holding an inmate's "vaccination status provides sufficient protection against the risks" even though he suffered "from medical conditions making him more vulnerable to serious illness or death from COVID-19"); *see also United States v. Estevez-Ulloa*, No. 21-2432, 2022 WL 1165771, at *2 (3d Cir. Apr. 20, 2022) ("'[W]ith access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated.'") (quoting *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021)); *United States v. Graham*, No. 12-418-2, 2022 WL 254623, at *4 (E.D. Pa. Jan. 27, 2022) ("Although the COVID vaccines do not prevent all infections, they have been found to provide strong protection from severe disease, hospitalization, and death from COVID-19 . . . .")

C

Even if Medina did present extraordinary and compelling reasons for release, it would be unwarranted based on the § 3553(a) factors. *See Pawlowski*, 967 F.3d at 331 (affirming denial of compassionate release for at-risk inmate because "the § 3553(a) factors weigh[ed]" against release). Judge Dalzell carefully considered these factors when Medina was sentenced in 2015 and the Court does so again now.

Notwithstanding Medina's expressed regret and remorse "for all wrongdoing" (Mot. for Release, ECF 84 at 18), he has not shown release before completion of his sentence would promote respect for the law, reflect the seriousness of his offense, provide just punishment for it, or protect the public from further crimes. *See* 18 U.S.C. § 3553(a)(2). He was sentenced to serve 180 months in prison in part because he posed a significant danger to the community – possessing drug distribution paraphernalia,

over one kilogram of heroin and multiple weapons including an AK-47 assault rifle.[3] Although Medina will be deported to the Dominican Republic upon release (Mot. for Release, ECF 84 at 18), his prior illegal reentry cannot be ignored.  Nor can the Court ignore his history of prior convictions for home invasion robbery.  To release Medina when more than five years of his fifteen-year sentence lie ahead would overlook the nature and circumstances of his offense and his history and characteristics.  *See* 18 U.S.C. § 3553(a)(1).

An appropriate Order follows.

BY THE COURT:

 */s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[3] Medina argues he should be considered as "non-violent" pursuant to *Bailey v. United States*, 516 U.S. 137 (1995), because the decision required showing "active employment" of a weapon in the underlying offense for a conviction under 18 U.S.C. § 924(c). (Mot. for Release, ECF 84 at 19.) However, after *Bailey*, Congress amended Section 924(c) "to cover possession as well as use" of a firearm.  *Welch v. United States*, 578 U.S. 120, 133 (2016); *see also United States v. O'Brien*, 560 U.S. 218, 232-233 (2010) (discussing statutory amendment known as the "Bailey fix").